UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MARY LOUISE H. ROSSIGNOL, Individually and in her capacity as Trustee of the LOUIS FREDRICK ROSSIGNOL, III LIVING TRUST, DATED APRIL 9, 2008, | ) ) ) ) ) | **C/A No.: 2:14-CV-2689-PMD** |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | **ANSWER AND COUNTERCLAIMS OF DEFENDANTS JAMES A. HAM, SR., AND JAMES A. "JAY" HAM, JR.** |
| JAMES A. HAM, SR., JAMES A. "JAY" HAM, JR., HAM & ROSSIGNOL FARMS, LLC, H & R FARMS, LLC, H & R HOLDINGS, LLC, FOLLY RIVER PARTNERS, LLC, PALMETTO SUMMIT, LLC, PALMETTO SUMMIT AVIATION, LLC, KELLAIR, LLC, CAROLINA MODULAR, INC., HIDEAWAY MOUNTAIN DEVELOPMENT, LLC, EASTERN DEVELOPMENT CORPORATION, LOGGERS RUN, LLC, TIMBERS, LLC, LOGGERS RUN III, LLC, SAWMILL VILLAGE, LLC, AND SNOWSHOE SUMMIT DEVELOPMENT, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

COME NOW the above Defendants, James A. Ham, Sr., and James A. "Jay" Ham, Jr. (the "Ham Defendants" except where individually referenced), and, fully answering and responding to the allegations of the Plaintiff's Complaint, would allege and show as follows:

**ANSWER AND FIRST AFFIRMATIVE DEFENSE**

1.    Except as expressly admitted or qualified herein, the Ham Defendants deny each and every allegation of the Plaintiff's Complaint and demand strict proof thereof.

2.    Upon information and belief, the Ham Defendants admit the allegations of Paragraph 1 of the Plaintiff's Complaint.

3.    The Ham Defendants admit the allegations of Paragraphs 2 and 3 of the Plaintiffs' Complaint.

4.    The Ham Defendants admit the allegations of Paragraph 4 of the Plaintiffs' Complaint.

5.    Upon information and belief, the Ham Defendants deny the allegations of Paragraph 5 of the Plaintiffs' Complaint.

6.    The Ham Defendants admit the allegations of Paragraph 6 of the Plaintiffs' Complaint.

7.    As to the allegations of Paragraph 7 of the Plaintiff's Complaint, the Ham Defendants admit only that Carolina Modular, Inc., was incorporated in the State of South Carolina in 1995, denying the remaining allegations thereof.

8.    The Ham Defendants admit the allegations of Paragraph 8 of the Plaintiffs' Complaint.

9.    The Ham Defendants admit the allegations of Paragraph 9 of the Plaintiffs' Complaint.

10.    As to Paragraph 10 of the Plaintiff's Complaint, the Ham Defendants admit that Palmetto Summit, LLC and Palmetto Summit Aviation, LLC, are wholly owned subsidiaries of H&R Holdings, LLC and that Folly River Partners, LLC conducted business in and around Charleston County.  The remaining allegations of Paragraph 10 are denied.

11.    As to Paragraph 11 of the Plaintiff's Complaint, the Ham Defendants admit Fredrick Rossignol was a member of Ham & Rossignol Farms, LLC and H & R Holdings, LLC,

Loggers Run, LLC, Loggers Run III, LLC, Timbers, LLC, Sawmill Village, LLC and Snowshoe Summit Development, LLC.  The Ham Defendants further admit Fredrick Rossignol was a shareholder in Eastern Development Corporation and Carolina Modular, Inc.  The Ham Defendants would show that no separate entity named "H & R Farms, LLC" existed, and this this was simply an abbreviated named used from time to time to reference Ham & Rossignol Farms, LLC.  The Ham Defendants deny that Plaintiff has any interest in Carolina Modular, Inc. Further responding, the Ham Defendants lack sufficient knowledge or information to admit the truth or falsity of the allegations of Paragraph 11 to the extent it alleges Plaintiff, whether individually or as a trustee, lawfully succeeded to the interest of Fredrick Rossignol is a member or shareholder in the remaining entities identified in Paragraph 11 and, therefore, demands strict proof thereof.

12.     Paragraph 12 of the Plaintiff's Complaint sets forth a statement of law for which no response is required.  To the extent a response is deemed required, the Ham Defendants deny the said allegations.

13.     As to the allegations of Paragraph 13 of the Plaintiff's Complaint, and without waiving any defenses in this action, the Ham Defendants admit the Plaintiff's Complaint seeks relief in excess of $75,000.00 for jurisdictional purposes only.

14.     As to the allegations of Paragraphs 14 and 15 of the Plaintiff's Complaint, the Ham Defendants admit that his Court has jurisdiction over this matter and that venue is proper in this District and Division.

15.     As to the allegations of Paragraphs 16 of the Plaintiff's Complaint, the Ham Defendants deny that Plaintiff is a shareholder or has any legal or equitable interest whatsoever in Carolina Modular, Inc. ("CMI").  Plaintiff agreed to abandon any interest she had in CMI on

or about August 9, 2011.  Further responding, the Ham Defendants admit Fredrick Rossignol was a member of Ham & Rossignol Farms, LLC and H & R Holdings, LLC.  Folly River Partners, LLC, Palmetto Summit, LLC, Palmetto Summit Aviation, LLC and KellAir, LLC are subsidiaries of H & R Holdings, LLC, but the Ham Defendants deny that Folly River Partners, LLC, and KellAir, LLC, are wholly owned by H & R Holdings, LLC.

16.    As to the allegations of Paragraphs 17 of the Plaintiff's Complaint, the Ham Defendants admit that Ham & Rossignol Farms, LLC, H & R Holdings, LLC, Folly River Partners, LLC, and Palmetto Summit, LLC were engaged in real estate development and that Palmetto Summit Aviation, LLC and KellAir, LLC were used to support in various capacities the other businesses.

17.    As to the allegations of Paragraph 18 of the Plaintiff's Complaint, the Ham Defendants admit Fredrick Rossignol was a member of Ham & Rossignol Farms, LLC, H & R Holdings, LLC, and for a period of time was a shareholder of CMI. The remaining entities referred to in Paragraph 18 were owned in whole or in part by H&R Holdings, LLC rather than the individuals.

18.    Upon information and belief the Ham Defendants admit the allegations of Paragraph 19 to the extent it alleges Plaintiff acquired whatever interest Frederick Rossignol is shown to have owned in the subject entities at the time of his death on May 28, 2008.  Except as admitted herein, the allegations of Paragraph 19 are denied.

19.    As to the allegations of Paragraph 20 of the Plaintiff's Complaint, the Ham Defendants admit only that James Ham and Jay Ham performed the majority of the efforts necessary to the day-to-day affairs of the companies and, further, would show that Fredrick Rossignol also was both involved and regularly informed as to the same before his death.

20.     The Ham Defendants deny the allegations of Paragraph 21 of the Plaintiff's Complaint as written.

21.     The Ham Defendants deny the allegations of Paragraph 22 of the Plaintiff's Complaint as written.  Further responding, the Ham Defendants admit only that they, with the full knowledge and agreement of the members, received certain compensation from various companies for their valuable services performed for and on behalf of those companies.   Further, Jay Ham received a salary from CMI as show in the regularly maintained records of the businesses when funds were available.

22.     As to the allegations of Paragraph 23 of the Plaintiff's Complaint, the Ham Defendants would show that the Indemnification Agreement referred to therein speaks for itself and is the best evidence of its terms, content and meaning. The Ham Defendants deny any allegation inconsistent therewith.

23.     As to the allegations of Paragraph 24 of the Plaintiff's Complaint, the Ham Defendants would show that the Status Agreement referred to therein speaks for itself and is the best evidence of its terms, content and meaning. The Ham Defendants deny any allegation inconsistent therewith.

24.     The Ham Defendants deny the allegations of Paragraph 25 of the Plaintiff's Complaint as written and demand strict proof thereof.

25.     The Ham Defendants deny the allegations of Paragraph 26 of the Plaintiff's Complaint as written.  Further responding, the Ham Defendants would show that Jay Ham formed CMI in 1995.  In 2006, James Ham and Fredrick Rossignol each purchased a 1/3 interest in the business.

26.    The Ham Defendants deny the allegations of Paragraphs 27, 28, and 29 of the Plaintiff's Complaint and demand strict proof thereof.

27.    The Ham Defendants deny the allegations of Paragraphs 30 and 31 of the Plaintiff's Complaint as written.   Further responding, the Ham Defendants would show that H&R Holdings purchased certain properties and thereafter entered into a contract with CMI for various improvements.  The properties would then be transferred to Palmetto Summit, LLC.  The intent was always to hold the properties, although upon information and belief one or more may have been sold after being approached by a buyer.

28.    The Ham Defendants deny the allegations of Paragraph 32 of the Plaintiff's Complaint.

29.     The Ham Defendants admit only so much of Paragraph 33 as would show that the credit line held by H&R Holdings, LLC would be repaid post-construction once a mortgage was secured.  The Ham Defendants deny that the funding came from only James Ham and Fredrick Rossignol as written.  The credit line was issued in the name of H&R Holdings, LLC and upon information and belief was guaranteed in equal interests by James Ham, Jay Ham, and Fredrick Rossignol.   Further responding, the Ham Defendants crave reference to the credit agreements mortgages, and leases referred to therein speaks for themselves and are the best evidence of their terms, content and meaning. The Ham Defendants deny any allegation inconsistent therewith.

30.    As to the allegations of Paragraph 34 of the Plaintiff's Complaint, the credit agreements and records thereof speak for themselves and are the best evidence of the status of the credit account at the time of Fredrick Rossignol's death.  The Ham Defendants deny any allegation inconsistent therewith.

31.     The Ham Defendants deny the allegations of Paragraphs 35, 36, 37 and 38 of the Plaintiff's Complaint and demand strict proof thereof.

32.     As to the allegations of Paragraph 39 of the Plaintiff's Complaint, the Ham Defendants admit only that three airplanes were acquired to assist with the various business operations.

33.     As to the allegations of Paragraph 40 of the Plaintiff's complaint, the Ham Defendants admit that James Ham used the airplanes more frequently but only because James Ham invested more time into the business operations, which necessitated frequent travel for the benefit of the business operations.  The Ham Defendants also admit they each owned a one-third interest in Palmetto Aviation, LLC, along with Fredrick Rossignol.  The remaining allegations of Paragraph 40 are denied.

34.     As to the allegations of Paragraph 41, the Ham Defendants deny that Jay Ham did not contribute financially as alleged, and they further deny that they individually owned one-half interest in one of the airplanes, which ownership interests are, upon information and belief, accurately set forth in the business records for the respective entities owning these planes.  The remaining allegations of Paragraph 41 are admitted.

35.     As to the allegations of Paragraph 42 of the Plaintiff's Complaint, the Ham Defendants admit only so much as would show that both of the airplanes described therein were sold.  Except as expressly admitted, the remaining allegations of Paragraph 42 are denied.

36.     The Ham Defendants deny the allegations of Paragraph 43 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S FIRST CAUSE OF ACTION
(Judicial Dissolution/Forced Buyout)

37.     As to the allegations of Paragraph 44 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

38.      No response is required to the allegations of Paragraphs 45, 46, 47, and 48 of the Plaintiff's Complaint, which state conclusions of law.   To the extent a response is deemed required, the Ham Defendants deny said allegations and demand strict proof thereof.

## PLAINTIFF'S SECOND CAUSE OF ACTION
(Accounting)

39.     As to the allegations of Paragraph 49 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

40.     The Ham Defendants deny Paragraph 50 of the Plaintiff's Complaint to the extent it suggests the Ham Defendants have not made available to Plaintiff an accounting of any entities in which Plaintiff has or claims an interest together with them.

41.     As to the allegations of Paragraph 51 of the Plaintiff's Complaint, the Ham Defendants admit only that Jay Ham at did oversee and manage, at certain times, the day-to-day affairs of the entities engaged in active operations and would further show that all members/shareholders were involved in the various business operations and knowledgeable and informed as to the same.  The Ham Defendants further would show that Logger's Run Units 1 and 5 could not be transferred as alleged from James Ham and Fredrick Rossignol because of encumbrances that would have had to have been satisfied upon such transfer.  Likewise, the Ham Defendants deny the allegations relative to Keystone Lodge, which also could not be transferred as alleged because of encumbrances that would have had to have been satisfied upon such transfer.  As to 101 Tradd Street, the Ham Defendants admit it was transferred to James Ham

with the knowledge and consent of all members of Snowshoe Summit Development, LLC.  As to 9390 Silverthorn Road in Largo, Florida, the Ham Defendants would show that they consented and agreed for Fredrick Rossignol to transfer the property into his name.  During his lifetime, Mr. Rossignol never did so, which was his choice without involvement or interference by the Ham Defendants.  This property has since been transferred, upon information and belief, into the name of Plaintiff.

42.    The Ham Defendants deny the allegations of Paragraph 52 of the Plaintiff's Complaint and demand strict proof thereof.  Further responding, to the extent Plaintiff alleges she lacks present awareness of various matters pertaining the various entities in which she has an interest, such is the product of her own refusal to participate in the business affairs.

43.    The Ham Defendants deny the allegations of Paragraphs 53, 44, and 55 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S THIRD CAUSE OF ACTION
(Unjust Enrichment/*Quantum Meruit*/Restitution)

44.    As to the allegations of Paragraph 56 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

45.    The Ham Defendants deny the allegations of Paragraphs 57 and 58 of the Plaintiff's Complaint and demand strict proof thereof.

46.    The Ham Defendants deny the allegations of Paragraph 59 of the Plaintiff's Complaint, except that they admit the company identified therein was owned in equal one-third interests by them and Fredrick Rossignol.

47.    The Ham Defendants deny the allegations of Paragraph 60 of the Plaintiff's Complaint and demand strict proof thereof.

48.     As to the allegations of Paragraph 61 of the Plaintiff's Complaint, the Ham Defendants admit only so much as would show that the airplane described therein was sold. Except as expressly admitted, the remaining allegations of Paragraph 61 are denied.

49.     The Ham Defendants deny the allegations of Paragraphs 62, 63, 64, 65, 66, 67 and 68 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S FOURTH CAUSE OF ACTION
(Conversion)

50.     As to the allegations of Paragraph 69 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

51.     The Ham Defendants deny the allegations of Paragraphs 70, 71, 72, and 73 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S FIFTH CAUSE OF ACTION
(Constructive Trust)

52.     As to the allegations of Paragraph 74 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

53.     The Ham Defendants deny the allegations of Paragraphs 75, and 76 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S SIXTH CAUSE OF ACTION
(Breach of Fiduciary Duty)

54.     As to the allegations of Paragraph 77 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

55.     No response is required to the allegations of Paragraph 78 of the Plaintiff's Complaint, which sets forth a conclusion of law.   To the extent a response is deemed required, the Ham Defendants deny said allegations and demand strict proof thereof.

56.     The Ham Defendants deny the allegations of Paragraphs 79, 80 and 81 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S SEVENTH CAUSE OF ACTION
(Right to Access Company Records)

57.     As to the allegations of Paragraph 82 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

58.     As to the allegations of Paragraph 83 of the Plaintiff's Complaint, the Ham Defendants admit only so much as would show that James and Jay Ham, among others including the Plaintiff, have had possessed various records of the business entities named in the Complaint.

59.     The Ham Defendants lack knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 84 of the Plaintiff's Complaint.

60.     The Ham Defendants deny the allegations of Paragraphs 85 and 86 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S EIGHTH CAUSE OF ACTION
(Declaratory Judgment)

61.     As to the allegations of Paragraph 87 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

62.     No response is required to the allegations of Paragraph 88 of the Plaintiff's Complaint, which sets forth a conclusion of law.   To the extent a response is deemed required, the Ham Defendants deny said allegations and demand strict proof thereof.

63.     The Ham Defendants deny the allegations of Paragraphs 89, 90, 91 (including subparts a. and b.), and 92 of the Plaintiff's Complaint and demand strict proof thereof.

## PLAINTIFF'S NINTH CAUSE OF ACTION
(Indemnity – As to James Ham)

64.    As to the allegations of Paragraph 93 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

65.    James Ham denies the allegations of Paragraphs 94, 95, 96, and 97 of the Plaintiff's Complaint and demands strict proof thereof.  Further Responding, James Ham would show that the Indemnification Agreement speaks for itself and is the best evidence of its terms, content and meaning.  James Ham denies any allegation inconsistent therewith. The brokerage account described in the Complaint was pledged as security for company debts and liabilities in order to preserve and protect valuable assets after the Plaintiff failed and unjustly refused to cooperate in the loan renewal process.  Plaintiff has directly benefitted from the pledge of the brokerage account in this manner.

## PLAINTIFF'S TENTH CAUSE OF ACTION
(Equitable Lien)

66.    As to the allegations of Paragraph 98 of the Plaintiff's Complaint, the Ham Defendants repeat and allege the preceding responses verbatim.

67.    The Ham Defendants deny the allegations of Paragraphs 99 and 100 of the Plaintiff's Complaint and demand strict proof thereof.

68.    The Ham Defendants deny that the Plaintiff is entitled to any of the remedies requested in the Complaint and the prayer of relief set forth therein, being all the remaining allegations of the Complaint.

## FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
(Business Judgment Rule)

69.    The Ham Defendants repeat and allege the preceding responses verbatim.

70.     Some or all of the Plaintiff's claims are barred by application of the business judgment rule, as the Ham Defendants acted at all times rationally and upon reasonable information available under the circumstances then and there existing.

### FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
(Failure to State a Claim)

71.     The Ham Defendants repeat and allege the preceding responses verbatim.

72.     Some or all of the Plaintiff's causes of action alleged in the Plaintiff's Complaint fails to state a claim upon which relief may be granted.

### FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
(Lack of Standing)

73.     The Ham Defendants repeat and allege the preceding responses verbatim.

74.     The Ham Defendants have requested from Plaintiff that she demonstrate her lawful status as a member and or shareholder of the companies named as Defendants in this action, to no avail.  The Ham Defendants lack sufficient knowledge and information of the ownership of the membership interests and shares previously held by Fredrick Rossignol following his death.  Although the Ham Defendants have communicated and dealt with Plaintiff for sometime regarding the affairs of the various businesses, Plaintiff has to date failed to demonstrate her lawful interest in and to any of the subject business entities.  In the absence of such lawful interest, Plaintiff lacks standing to pursue one or more of the claims alleged in the Complaint.

### FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
(Compliance with Applicable Law)

75.     The Ham Defendants repeat and allege the preceding responses verbatim.

76.     Some or all of the Plaintiff's claims are barred because the Ham Defendants acted at all times in conformance with applicable law in regards to the various affairs of the businesses.

## FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
(Equitable Defenses)

77.     The Ham Defendants repeat and allege the preceding responses verbatim.

78.     On multiple occasions, Plaintiff failed and refused to cooperate with the Ham Defendants, which obstructed the business operations and placed various assets of companies in jeopardy and/or caused the assets to be lost to foreclosure.  Among other things, Plaintiff failed and refused to provide requested information, financial contributions, records, and to otherwise participate in the course of maintaining current financial obligations and/or to enable certain debts to be refinanced or renewed in order to avoid foreclosure.  As a result of Plaintiff's delay, failure to cooperate, and failure to provide requested information, severable assets with value were lost to foreclosure.

79.     In the light of, among other things, the foregoing, some or all of the Plaintiff's claims are barred by the equitable doctrines of unclean hands, laches, estoppel, waiver.

## FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
(Statute of Limitations/Laches)

80.     The Ham Defendants repeat and allege the preceding responses verbatim.

81.     One or more of the Plaintiffs claims is barred by the applicable statute of limitations or, in the alternative, Plaintiff has, upon information and belief, slept on her rights, if any, to the extent that the equitable doctrine of laches should apply as a bar to her claims.

## FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
(Set Off/Recoupment)

82.     The Ham Defendants repeat and allege the preceding responses verbatim.

83.     As alleged herein, the Plaintiff has engaged in a course of intentional and/or wrongful conduct that has proximately caused harm to the Ham Defendants, including lost

valuable assets, lost investments, lost business opportunities, lost financial gain, and other resulting damages.

84.     The Ham Defendants deny they have any liability to the Plaintiff as alleged in the Complaint.  However, in the event the Ham Defendants are found to be liable to Plaintiff for any sum or amount, said amount should be subject to the set off and/or recoupment of all damages suffered by the Ham Defendants as a direct and proximate results of the Plaintiff's conduct.

## FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

85.     The Ham Defendants repeat and allege the preceding responses verbatim.

86.     Some or all of the Plaintiff's Claims are barred, or the recoverable damages reduced, as a result of the Plaintiff's failure to mitigate her alleged damages.

## FURTHER ANSWERING, AND AS AN ADDITIONAL AFFIRMATIVE DEFENSE
### (Reservation of Additional Affirmative Defenses)

87.     The Ham Defendants give notice that they intend to rely on any other affirmative defenses that may become available or appear during, or are the result of, discovery proceedings in this action, and hereby reserve his right to amend this Answer to assert such defenses.

## FURTHER ANSWERING, AND BY WAY OF COUNTERCLAIM
## AGAINST THE PLAINTIFF

COME NOW the Ham Defendants, and by way of counterclaim against the Plaintiff, do hereby by allege and show as follows:

88.     The counterclaims set forth herein arise from the same transactions or occurrences as the allegations of the Plaintiff's Complaint.

89.     The amount in controversy in this action exceeds the sum of $75,000.00, exclusive of interests and costs.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the Plaintiff and the Defendants are diverse in their citizenship.  One or more

the Defendants lives or owns property in Charleston County, and venue in this Division is proper.

## ALLEGATIONS OF FACT IN SUPPORT OF COUNTERCLAIM

90.     The Ham Defendants are members and/or Shareholders in the entities named as Defendants (the "Defendant Companies") in this action, or by virtue of their ownership have an interest therein.

91.     Plaintiff alleges and claims an interest, as a member, shareholder, and/or officer of the Defendant Companies, being the same entities in which the Ham Defendants have an interest.

92.     At various times, the Defendant Companies, or some of them, owned various assets, primarily consisting of real estate and development interests.  In large part, these various real estate and development interests are or were subject to mortgages (or other similar encumbrances) securing the repayment of debts owed by the respective entities.

93.     At pertinent times, the Defendant Companies have had or have incurred various debts and operating expenses necessary to their operation.

94.     Various and valuable assets of the Defendant Companies, which were essential to the success of the Defendant Companies also secured certain of the indebtedness owed by the Defendant Companies.  As a result, in order to protect and preserve these valuable assets, it was necessary for the Defendant Companies to remain in good standing with their lenders and creditors.

95.     Plaintiff was informed, knew, or should have known that failure to meet the financial obligations of the various Defendant Companies would expose the Defendant

Companies to, among other things, liability and the loss or foreclosure of the collateralized assets, which primarily consisted of real estate.

96.     Despite this knowledge, Plaintiff failed and refused to cooperate in good faith with the Ham Defendants and the Defendant Companies to protect these assets and avoid their loss or foreclosure.

97.     As a direct and proximate result of Plaintiff's conduct, the Defendant Companies unnecessarily lost valuable assets, resulting in lost investments, lost business opportunities, lost financial gain, and other resulting damages.

98.     In addition, Plaintiff's failure and refusal to cooperate with the Ham Defendants in the management of the day to day affairs of the Defendant Companies has damaged the Ham Defendants and the Defendant Companies in that the Ham Defendants have, without compensation, been required to spend greater than necessary time, energy and resources, to carry out the various affairs of the business without Plaintiff's participation.

## FOR A FIRST CAUSE OF ACTION AND COUNTERCLAIM AGAINST PLAINTIFF
(Breach of Fiduciary Duty)

99.     The Ham Defendants repeat and allege the preceding paragraphs verbatim, except where inconsistent.

100.     To the fullest extent of her interest in the various Defendant Companies, the Plaintiff had and continues to owe a fiduciary duty to the Ham Defendants and the Defendant Companies to act at all times honestly, fairly, and in good faith and in the best interests of the Ham Defendants and the Defendant Companies and to protect, preserve and share all property, assets, investments, funds and business opportunities of the Defendant Companies.

101.     The Plaintiff has breached and otherwise failed to fulfill her fiduciary obligations to the Ham Defendants and the Defendant Companies, by, *inter alia*:

a) Failing and refusing to give the Ham Defendants and the Defendant Companies material information important and necessary to the business affairs of the Defendant Companies; and/or

b) Failing and refusing to cooperate with various lending institutions to avoid secure loan renewals, refinancing, and/or to avoid foreclosure of company assets; and/or

c) Failing and refusing to do all things necessary and reasonable to protect the property, assets, investments, funds and business opportunities of the Defendant Companies from loss or foreclosure; and/or

d) In such other and further manners as the evidence may reveal.

102.    As a direct and proximate result of the Plaintiff's breaches of her fiduciary duties, the Ham Defendants have been damaged by, among other things, the loss of corporate opportunities, loss of income, loss of investments, loss of unrealized time invested in the management of the affected companies without compensation, damage to personal credit, and such other and further damages as may be shown at trial.

103.    Upon information and belief, the Ham Defendants are entitled to a judgment against the Plaintiff for all actual and compensatory damages proximately caused by Plaintiff's breaches of her fiduciary duties owed to the Ham Defendants and the Defendant Companies.

**FOR A SECOND CAUSE OF ACTION AND COUNTERCLAIM AGAINST PLAINTIFF**
(Declaratory Judgment)

104.    The Ham Defendants repeat and allege the preceding paragraphs verbatim, except where inconsistent.

105.    In accordance with 28 U.S.C. § 2201(a), the Declaratory Judgments Act, the Ham Defendants allege and show that an actual and justiciable controversy exists between the Plaintiff

and the Ham Defendants insofar as the Plaintiff's rights, interests and obligations in and to the Defendant Companies are concerned.

106.     Prior to his death, Fredrick Rossignol was a member and/or shareholder in various entities named herein together with the Ham Defendants.

107.     Upon information and belief, Fredrick Rossignol's Estate was opened for probate in the State of Florida.  He was survived by his wife, the Plaintiff.

108.     After Fredrick Rossignol's death, the Ham Defendants communicated in good faith with Plaintiff about the various Defendant Companies and their status.

109.     Upon information and belief, Plaintiff was involved in litigation pertaining to the Estate of Fredrick Rossignol.

110.     The Ham Defendants requested that Plaintiff demonstrate the ownership status of the various interests owned by Fredrick Rossignol and/or his Estate in the Defendant Companies, as applicable, upon resolution and/or distribution of the relevant assets of his Estate.

111.     To date, Plaintiff has failed and refused to demonstrate who is the current rightful owner of the membership and shareholder interests held by Fredrick Rossignol at the time of his death.

112.     The Estate of Fredrick Rossignol is not a party to this action.

113.     Under the facts, conditions and circumstances alleged in the Plaintiff's Complaint and set forth herein, declaratory relief is necessary to determine what rights, interests, obligations and liabilities the Plaintiff has, if any, in and to the Defendant Companies and, further, to the Ham Defendants as a result thereof.

## DEMAND FOR JURY TRIAL

114.    The Ham Defendants demand a jury trial in accordance with Rule 38, *Fed.R.Civ.P.* for all issues so triable.

Respectfully submitted,

THURMOND KIRCHNER TIMBES & YELVERTON, P.A.

/s/Michael A. Timbes
MICHAEL A. TIMBES (ID# 9951)
THOMAS J. RODE (Id #11139)
15 Middle Atlantic Wharf, Suite 101
Charleston, SC 29401
Telephone: (843) 937-8000
Fax: (843) 937-4200
mtimbes@tktylawfirm.com
trode@tktylawfirm.com

August 26, 2014
Charleston, South Carolina